## MARIE L. JOHNSTON *vs.* HERBERT L. JOHNSTON.

### FEBRUARY 10, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1)  *Divorce.   Petition to Vacate Decree for Fraud.   Exceptions.*

It has been the established principle in this state that where a final decree of divorce has been procured by fraud practiced by the petitioner, in which the respondent has not participated, and where the court has been induced by that fraud to take jurisdiction of a case of which it in fact had no jurisdiction, the decree will be vacated even after the lapse of years, it being always considered that great caution should be exercised in scrutinizing the testimony in support of such petition.

A petition to vacate a decree for such cause, filed within the period of six months after decision is properly filed as incidental to and a part of the pending case and if filed after final decree it should be treated as an independent petition, and in either case a bill of exceptions will lie from the decision of the justice upon the petition.

DIVORCE. Heard on motion to dismiss petitioner's bill of exceptions and denied.

PARKHURST, J. This is a petition to vacate a final decree entered October 27, 1910, in a divorce suit, wherein the petitioner's wife, Marie L. Johnston, was the petitioner and this petitioner in the case at bar was respondent. The suit was for a divorce *a vinculo matrimonii;* the petition therein was filed in the Superior Court, sitting in Providence County, February 4, 1910; it contains an affidavit of the petitioner sworn on the same date, that the respondent is in the State of Florida; and among the papers there appears a citation in the usual form with a return showing personal service of citation upon said Herbert L. Johnston in Jacksonville, Florida, on the 8th day of February, 1910, by a disinterested person, in accordance with the statute; there also appears a citation for taking depositions in the usual form, with a return showing personal service thereof upon said Herbert L. Johnston, in Jacksonville, Florida, on said 8th day of February, 1910, by the same disinterested person. This latter citation notifies the respondent, Johnston, of the taking of depositions in the divorce suit, on the 3d day of March, 1910, before a master in chancery in Providence; there also appears on file with the papers an entry of appearance in the divorce case, on behalf of the said Herbert L. Johnston respondent, bearing date March 3, 1910, purporting to be signed by William W. Bearman, Attorney.

Depositions were taken on behalf of Marie L. Johnston, petitioner in the divorce suit, before a master in chancery in accordance with said notice; it does not appear that said Herbert L. Johnston was present or represented at the taking of the depositions. Thereafter the case was heard before a justice of the Superior Court, April 26, 1910, and decision was entered for the petitioner; and after six months from decision, on the 27th day of October, 1910, a final decree of divorce *a vinculo*, was entered by order of a justice of the Superior Court.

It is not contended that, so far as appears upon the papers, the statutory procedure was not duly followed. In the proceeding now before the court, the said Herbert L. Johnston filed his petition on May 29, 1914, wherein he sets forth the purported service of the citations above referred to and the purported entry of appearance on his behalf, and the hearing of the divorce case and the decision and final decree, and avers "that at no time has service of said citation or of said notice ever been made upon your petitioner; that at no time did he ever authorize or engage an attorney to appear for him in this cause;" and prays for citation to said Marie L. Johnston and "further prays that said decree and decision be vacated and said alleged service and entry of appearance by attorney be expunged from the records."

Citation on this petition was duly issued by order of a justice of the Superior Court, returnable June 6, 1914; the said Marie L. Johnston duly appeared by counsel; and upon the 13th day of June, 1914, hearing before a justice of the Superior Court was begun and testimony was taken on that date in support of the allegations of the petition; and on that day the case of the petitioner upon his petition as above set forth appears to have been closed. Adjournment was taken to June 27, 1914, and at that time witnesses on behalf of Marie L. Johnston were produced and examined. After the examination of these witnesses was concluded, a further adjournment of the case was had to July 6, 1914, at which time further testimony was offered on the part of Herbert L. Johnston the petitioner, and the justice announced his decision dismissing the petition.

There appears among the papers a paper, entitled "Motion for leave to amend," file-marked June 17th, 1914, pending the hearing as above set forth, after the hearing closed on the 13th of June, 1914, when the petitioner appears to have closed his case upon the petition as originally filed. This motion asks leave to amend the original petition by adding allegations to the effect that the said Marie L. Johnston at the time she filed her petition for divorce (February 4,

1910) was not a resident of this county (Providence County) and was not a domiciled inhabitant of this state and had not resided herein for two years next before preferring her petition; and that said Herbert L. Johnston was not then or ever a resident of this state. Nothing appears either upon this motion itself or in the transcript before us to show that this motion was brought to the attention of the justice, or that the amendment asked for was allowed to be made, or that it was considered by the justice as before him at the subsequent hearings; and his decision is based upon the allegations of the original petition, and treats only of the matters relating to service of citation and notice of taking depositions, and employment of an attorney. It would seem therefore that in the Superior Court the trial of the case now before us was upon the original petition without regard to any attempted amendment thereof. After decision of the justice dismissing the petition, counsel for Herbert L. Johnston, petitioner in this matter now before the court, within seven days (on July 13, 1914) duly filed his notice of exception to the decision and of his intention to prosecute a bill of exceptions upon all his exceptions; and his bill of exceptions and transcript were filed in due course, and allowed by the justice and are now before this court.

Counsel for Marie L. Johnston have filed in this court a motion to dismiss the bill of exceptions, upon the following grounds:

"1st. Because the Supreme Court has no jurisdiction to review the decision of the Superior Court denying a motion to vacate a final decree of divorce.

"2nd. Because the vacating of a final decree of divorce upon application made to the Superior Court after six months from the time when said decree was entered is within the discretion of said Superior Court and is not subject to review by the Supreme Court.

"3rd. Because there is no statutory provision for the reviewing by the Supreme Court upon a bill of exceptions of the decision of the Superor Court denying a motion to vacate the final decree in a divorce case."

We think that counsel for the respondent to this petition have misapprehended the nature of the proceeding now before us. Some confusion of mind has apparently arisen by reason of the fact that this petition has been filed and numbered and docketed as if it were a part of the divorce case, and merely an incidental proceeding therein. But the divorce case was long since closed by a final decree entered October 27, 1910; this petition to vacate that decree is in the nature of a new action brought in the same court having original jurisdiction in the divorce case, and is an attempt by this petitioner to show the Superior Court was deceived, by a false return of service and by a false assumption of authority, on the part of an unauthorized attorney, to appear for the respondent, into the belief that the non-resident party respondent in the divorce suit had been personally served with process and was properly represented before the court; and that thereby the court was induced to take jurisdiction, when it had in fact no jurisdiction over the respondent. This petition does not seek to have the divorce case reopened and to have a new trial thereof; it seeks to vacate the decree by showing that the whole proceeding was void for want of jurisdiction.

After the adoption of our State Constitution in 1843, in the revision of the Public Laws of the State in 1844, the Supreme Court elected pursuant to the provisions of the constitution was invested with jurisdiction of all petitions for divorce (see Pub. Laws of 1844, p. 91, Sec. 8; p. 264, Sec. 7). Such jurisdiction remained in the Supreme Court until 1893, when the Judiciary Act, passed May 19, 1893, and in effect in August, 1893, created an Appellate Division of the Supreme Court, and a Common Pleas Division of the Supreme Court; thereunder exclusive jurisiction of all petitions for divorce was conferred upon the Appellate Division (See Judiciary Act, Chap. 2, §§ 3-4); the said act also by Chap. 26, § 2, provided as follows: "Sec. 2. In case of judgment by default, or in case of judgment entered by mistake, or in case of decrees in all equity causes and cases following the

course of equity, the court entering the same shall have control over the same for the period of six months after the entry thereof, and may, for cause shown, set aside the same and reinstate the case, or make new entry and take other proceedings, with proper notice to parties, with or without terms, as it may by general rule or special order direct."

Exclusive jurisdiction of all petitions for divorce remained in the Appellate Division of the Supreme Court until the year 1905, when the Court and Practice Act went into effect whereby, pursuant to the provisions of Article XII of Amendments to the Constitution, adopted November, 1903, the Supreme Court was constituted as a court of "final revisory and appellate jurisdiction upon all questions of law and equity." (See Gen. Laws, 1909, p. 42 and p. 55.)

By the provisions of the Court and Practice Act, which was passed May 3, 1905, the judicial system of the state was revised to conform to the provision of Article XII of amendments to the constitution above referred to, the Superior Court was created, and exclusive original jurisdiction of petitions for divorce was conferred upon the Superior Court. (See C. P. A., p. 3, § 9.) By the same act, p. 1, § 2, "The Supreme Court shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided;" . . . "it shall have jurisdiction of bills of exceptions" . . . &c.

Proceedings for divorce in this state at least since the enactment of Pub. Laws of 1844, above referred to have been by petition tried by one or more judges without a jury. So long as jurisdiction was vested in the Supreme Court, or later in the Appellate Division of the Supreme Court, being the court of last resort, there was no occasion for a bill of exceptions; proceedings subsequent to a decision or a decree were had before a quorum of the court upon motion or petition. Thus in *Mumford* v. *Mumford*, 13 R. I. 19, 21, after the hearing and granting of a petition for divorce, the

respondent filed a motion for a rehearing of the petition, at the same term, on grounds which might and should have been made a matter of defence in the trial of the petition, "which in all fairness and honesty he should have made a year ago" the rehearing was denied; but the court (p. 22) says in conclusion: "A decree in a divorce case, like all other judgments and decrees, is subject to the order of the court during the term, and liable to be reopened and reheard during the term upon seasonable application and for satisfactory reasons." It is to be noted that at that time (1879) the Supreme Court under the law held certain defined terms in the different counties of the state for the hearing of cases.

Under the provision of the Judiciary Act, above quoted, giving to the court control for six months over its decrees entered in cases following the course of equity, the appellate division in divorce proceedings by order of February 1, 1894, established the practice of granting divorce decrees expressly subject to said provision. (See 18 R. I. order of February 1, 1894.) The case of *Locke* v. *Locke*, 18 R. I. 716, was a case decided in 1894, where under said provision the Appellate Division, upon motion of the respondent, within six months after entry of a decree *nisi*, set aside a decree for divorce so entered and reinstated the case for trial, on the ground that it appeared that proper service of the divorce petition was not made upon the respondent, so as to give a fair opportunity for defence.

The same practice by petition to set aside a docket entry granting a divorce, and to reinstate the case on the docket was followed in *Roberts* v. *Roberts*, 19 R. I. 349 (1896); the petition was heard and denied by the Appellate Division. See, also, *White* v. *White*, 22 R. I. 602 (1901), and cases *infra*.

In *DeSouza* v. *DeSouza*, 92 Atl. 983, docketed in the Appellate Division of the Supreme Court of this state as Miscellaneous Petition, No. 2455, filed February 28, 1898, the petitioner alleged fraud in the procuring of a divorce by her husband in this state in 1892, specifying fraud in the

giving by the husband of a false affidavit as to his having no knowledge of her residence or whereabouts, when, as a matter of fact, he knew she was living in Boston, Massachusetts, thereby avoiding personal service upon her and obtaining an order of publication in a newspaper in East Greenwich of which she never had notice or knowledge; and alleging that her husband was not a resident of this state for one year next before the preferring of said petition, but was a citizen of Massachusetts. This petition after due service upon the respondent was heard by the Appellate Division in full court upon depositions duly taken, the allegations of the petition were found to be true, the prayer of the petition was granted and the decree of divorce entered in 1892 was vacated; final decree upon this petition being entered May 25, 1899.

The same practice has been followed and approved in other jurisdictions, having statutory provisions and procedure substantially similar to our own. *Edson* v. *Edson*, 108 Mass. 590, 597; *Adams* v. *Adams*, 51 N. H. 388; *Holbrook* v. *Holbrook*, 114 Mass. 568; *Zeitlin* v. *Zeitlin*, 202 Mass. 205.

An act passed April 2, 1902, Chap. 971, Pub. Laws, January, 1902, entitled "An act in amendment of Chapter 195 of the General Laws, entitled 'Of Divorce,'" after making several amendments and additions to said Chapter 195 of the General Laws (of 1896), includes the following additional section: "Sec. 19. After final decree for divorce from the bond of marriage either party may marry again; but no decree for such divorce shall become final and operative until six months after the trial and decision." This provision was re-enacted in the General Laws of 1909, and appears as Section 19 in Chapter 247 of that revision. Under this section it has been the practice, since its enactment in 1902, to enter decision after hearing, and not to enter a final decree of divorce from the bond of marriage until six months have elapsed after decision.

In *Elmgren* v. *Elmgren*, 25 R. I. 177, decided in 1903, docketed as M. P. No. 2562, and heard by the Appellate

Division, in full court, upon petition seeking to vacate a decree of divorce entered April 6, 1897, it was held that where a divorce was granted without notice to the wife as a result of a false affidavit of petitioner as to the residence of the wife, the wife not being implicated therein, the decree of divorce would be set aside as a fraud upon the court.

(1) ·It thus appears that the Supreme Court of this state, or the Appellate Division thereof, down to the time of the adoption of the Court and Practice Act in 1905, has consistently followed the principle laid down in this and other jurisdictions, as shown by the cases above cited, that where a final decree of divorce has been procured by means·of fraud practiced by the petitioner, in which the respondent has not participated, and where the court has been induced by that fraud to take jurisdiction of a case of which it in fact had no jurisdiction, the decree will be vacated, even after the lapse of years; it being always considered that great caution should be exercised in scrutinizing the testimony in support of the petition. (See *State* v. *Watson*, 20 R. I. 354, 357.)

It would seem that petitions or motions, of the character referred to in the cases above cited, filed within the period of six months after decision and before final decree, while the divorce case is still pending, are properly filed as incidental to and a part of the pending case; and that petitions filed after final decree for the purpose of vacating the decree should be treated as independent petitions, as they were in the cases of *DeSouza* v. *DeSouza,* and *Elmgren* v. *Elmgren, supra.*

In the divorce case of *White* v. *White,* Ex. &c., No. 4620 (unreported), within six months after the rendition of a decision for the petitioner in the Superior Court, and before final decree was entered, the respondent filed in the Superior Court a motion to have the decision in favor of the petitioner rendered April 17, 1912, set aside and the cause reinstated; the motion was denied after hearing on the merits and the moving party took an exception to such denial and brought

his bill of exceptions to this court, where it was heard on its merits without objection; and by rescript filed April 23, 1913, the exception was overruled and the case was remitted to the Superior Court.

It appears that procedure by way of a bill of exceptions or equivalent thereto has also been followed without objection in other jurisdictions having statutes and procedure similar to our own. See *Adams* v. *Adams*, 51 N. H. 388; see, also, *Zeitlin* v. *Zeitlin*, 202 Mass. 205; in these latter cases, the original jurisdiction of the divorce proceeding, and also of the petition or motion to vacate the decree or reinstate the petition for divorce, was in an inferior court, and the final determination of the questions raised was sought from the court of last resort in *Adams* v. *Adams* through exceptions taken in the inferior court; and in *Zeitlin* v. *Zeitlin* upon appeal and report of the case to the appellate court.

In the case of *Fidler* v. *Fidler*, 28 R. I. 102 (1907), this court held that an appeal to this court, in the nature of an appeal in equity, does not lie from a final decree of divorce granted by the Superior Court, for reasons fully discussed therein, and growing out of the construction of the statutes relating to divorce.

In the case of *Thrift* v. *Thrift*, 30 R. I. 357, (1910) it was held by this court after careful consideration of our statutes relating to divorce proceedings that a petition for divorce is a "civil action," and that after decision in a divorce case and prior to the entry of a final decree of divorce a bill of exceptions is the proper procedure to bring before this court for adjudication any error claimed by the excepting party to have been committed by the trial court.

If a petition for divorce is a "civil action heard on its merits" within the meaning of our statutes, it is clear that a petition to vacate a divorce decree for fraud practiced upon the court, filed, as in this case, properly in the first instance before the Superior Court having exclusive jurisdiction of proceedings for divorce, and therein heard by a single justice without a jury upon allegations of fact set forth in the

petition, is also a "civil action heard on its merits;" it involves the determination of issues of fact tendered by the petition and leads to a decision by the justice upon those questions of fact; it involves the possibility of error on the part of the trial judge in the admission or exclusion of testimony, as well as in the decision based upon the facts; in no essential respect does such procedure as was had on the petition now before us differ from that upon a divorce petition. This proceeding is therefore a "civil action," and plainly falls within the provisions of Gen. Laws of 1909, cap. 298, § 8, *viz.:* "Any person interested in a probate or other appeal, and any party to a civil action heard on its merits by the Superior Court without a jury, aggrieved by a ruling, decision, or finding of the court upon any issue of fact or matter of law, or upon a motion for a new trial for newly discovered evidence, may except thereto."

No question is raised as to the regularity of the procedure followed in this matter leading up to the filing of the bill of exceptions and transcript, and the certification of the papers to this court.

We are therefore of the opinion that this court has jurisdiction to entertain the bill of exceptions now before it, and that such procedure by bill of exceptions is in all respects proper and in accordance with the provision of the statute above quoted.

The motion to dismiss the bill of exceptions is therefore denied and dismissed, and the case will stand for hearing upon the bill of exceptions.

*Green, Hinckley and Allen,* for petitioner.

*Theodore Francis Green, Chauncey E. Wheeler,* of counsel.

*Joseph C. Cawley,* for respondent.